The ESTATE OF Janice D. PITRE, individually and on behalf of all fellow employees and past employees of the defendant who are similarly situated, Plaintiffs,

v.

WESTERN ELECTRIC COMPANY, INC., Defendant.

Civ. A. No. 76–218–C2.

United States District Court, D. Kansas.

July 10, 1989.

Steven L. Hobson, Ronald J. Stites and Sandra Midkiff, Kansas City, Mo., and Michael E. Callen, Kansas City, Kan., for plaintiffs.

Spencer, Fane, Britt & Browne, Jack L. Whitacre, Stanley E. Craven and Georgann H. Eglinski, Kansas City, Mo., and Lawrence Ferree, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This aged case comes before the court for a determination of damages. The plaintiff [1] brought this action individually and on behalf of a class of women employees, alleging gender-based discrimination in violation of 42 U.S.C. § 2000e et seq. (Title VII). In an order dated August 9, 1983,

---

1. Janice D. Pitre, the original plaintiff in this action, is deceased. Her estate has been substituted.

(liability order) the court found that the defendant was liable to the plaintiff and the class. "Plaintiff" hereafter refers to the class as certified, which includes "all female employees of [the defendant] in positions ranging from grades M-10 through M-50 and in the position of section chief, who have been discriminated against in assignment, promotion, or downgrading, and who have been employed at defendant's facilities in Merriam and Lenexa, Kansas, after December 11, 1974)." We addressed the issue of damages in orders dated December 14, 1984, (damages order) and April 23, 1985, and a judgment was entered on June 20, 1985 (damages judgment). The defendant appealed our determination of liability, and both parties appealed the remedies as to the class. The Tenth Circuit affirmed our liability findings, but reversed and remanded the case for reconsideration of the remedy. *Pitre v. Western Electric Co.*, 843 F.2d 1262, 1264 (10th Cir.1988). We directed the parties to attempt to reach an agreement as to the remedy in light of the circuit's opinion, but they were unable to do so. Having received the parties' proposed findings of fact and conclusions of law on the remedy issue, the court is prepared to rule.

Initially, we briefly examine our determination on liability, which was affirmed by the Tenth Circuit.[2] Next, we focus on our earlier order on damages, and the Tenth Circuit's reversal of that order. Finally, we tailor a new remedy in light of the circuit court's opinion.

## I. *The Prior Opinions.*

### A. The Liability Order.

The defendant's work force includes three types of employees: (1) hourly employees, which are blue-color workers, (2) salary-graded employees, which are white-color office employees classified in five grades from M-10 to M-50, and (3) management, the lowest grade of which is section chief. At issue in this case is the distribution of employees in grades M-10 through M-50 and in the section chief position.

Prior to the passage of Title VII in 1964, the defendant openly discriminated against women in terms of employment and advancement. In fact, the defendant's treatment of women in the work force did not begin to improve until the late 1960's and early 1970's, and throughout the 1970's, discrimination continued. In the early 1970's, women who were salary-graded employees were clustered in the lower classification levels. As we stated in the liability order:

> The net effect of the past discriminatory practices and the more recent fact that promotion decisions were being made by male section chiefs, resulted in more women remaining in the lower levels of the salary-graded employee plan. Specifically, distributions of males and females in the salary-graded universe and the management level at Merriam [ (one of the two facilities involved in this action) ] on December 31, 1974, were as follows:

|  | Males | | Females | |
|---|---|---|---|---|
|  | No. | % | No. | % |
| Manager | 1 | 100 | 0 | 0 |
| Asst. Manager | 2 | 100 | 0 | 0 |
| Dept. Chief | 10 | 100 | 0 | 0 |
| Section Chief | 39 | 95 | 2 | 5 |
| M-50 | 24 | 92 | 2 | 8 |
| M-40 | 16 | 57 | 12 | 43 |
| M-30 | 4 | 17 | 19 | 83 |
| M-20 | 4 | 31 | 9 | 69 |
| M—10 | 2 | 11 | 17 | 89 |

2. We will restate in a cursory manner the facts underlying this lawsuit. We make no new findings, as our recall of the facts was much more vivid when our liability order was entered.

Liability Order at 21 (the table above is presented differently than was the table in the liability order, but the numbers are the same).

In 1975, the defendant reorganized management because of a decline in business, and some salary-graded employees were downgraded or laid off. The downgradings disproportionately affected women in each M-level category. No salary-graded employees were promoted from June 1974 to June 1976. When promotions resumed, the defendant generally followed a policy of upgrading employees to their former M-level classifications in the order in which they were downgraded, but men did get some significant promotions ahead of women.

Given the evidence presented at trial, we concluded that

[t]he examples of preferential treatment of men over women were not merely isolated instances or "accidental in nature," but were so pervasive throughout the Merriam and Lenexa facilities that the only rational conclusion to be reached is that defendant practiced sex discrimination with respect to salary-graded women.

Liability Order at 31. Specifically, we found that the defendant discriminated against the class with respect to (1) downgradings and layoffs from December 11, 1974, through 1976, and (2) promotions since 1976. *See* Damages Order at 1. As stated above, the Tenth Circuit affirmed our liability determination.

B. The Damages Order.

After finding liability, we attempted to formulate an appropriate remedy. We recognized that the remedy should, "as nearly as possible, 'recreate the conditions and relationships that would have been had there been no' unlawful discrimination." *Teamsters v. United States*, 431 U.S. 324, 371–72, 97 S.Ct. 1843, 1872–73, 52 L.Ed.2d 396 (1976) (quoting *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 769, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976)). However, we also noted that given the facts herein, a determination of the individuals who would have been promoted absent discrimination is impossible. Thus, we used a formula approach to determine back pay. Damages Order at 2–3.

First, we focused on the formula for back pay for promotions which women were wrongfully denied in a given year. We held that calculations of back pay for each level from M–20 to section chief should be made by multiplying the percentage of women in the promotion pool (those persons in the next lower M-level category) by the number of promotions (of men and women) to the level given that year, and then subtracting from this figure the number of promotions actually given to women in that year. The resulting figure is the number of women who were wrongfully denied promotions. Further, we stated that after the calculations for a given year are completed, the subsequent years' figures should be determined using the fictional numbers of women that would be at each level had there been no discrimination. Damages Order at 4.

Second, we focused on a formula for back pay for downgradings and layoffs which resulted from discrimination. We determined that the percentage of women in the relevant pool (those persons in the M-level from which the downgrades or layoffs were made) should be multiplied by the number of downgrades or layoffs (of men and women) actually occurring in the relevant year. This figure should be subtracted from the number of women actually downgraded or laid off, with the resulting figure being the number of women who were wrongfully downgraded or laid off.

To determine back pay for wrongfully denied promotions or for wrongfully downgrades or layoffs, the court used the difference between (1) the average earnings of males in the higher M-level category and (2) the average earnings of females in the lower M-level category.

Third, the court examined the issue of front pay, stating that the defendant's discrimination had resulted in a clustering of women at lower M-level categories, and

that the "class will not be afforded complete relief unless the court grants front pay to the class to continue until women constitute an appropriate percentage of the employees at all levels, M–10 through section chief." Damages Order at 6. We stated:

*We could have gone back to 1965 (when Title VII became effective) and determined the number of promotions discriminatorily denied women between 1965 and 1974 (the starting date for back pay calculations). See Thompson v. Boyle, 499 F.Supp. 1147 (D.D.C.1980), modified sub nom. Thompson v. Sawyer, 678 F.2d 257 (D.C.Cir.1982) (citing Salone v. United States, 645 F.2d 875 (10th Cir.), cert. denied, 454 U.S. 894 [102 S.Ct. 390, 70 L.Ed.2d 208] (1981)). This method would have resulted in the number of women that should have been at each level by 1974 in the absence of discrimination.* Because a greater number of women would have been at the higher levels, a greater back pay recovery for the class would result for the years 1974 through 1982. *Id.*

\*   \*   \*   \*   \*   \*

In recognition of the inequity dicussed in *Thomson [Thompson ] v. Sawyer,* and in order to fully compensate the class, we have decided that front pay is appropriate in this case. It can be assumed that in the absence of discrimination, women would comprise approximately the same percentage at each level as that of the available workforce. Therefore, one would expect that in time women would represent at least fifty percent of each M level. It follows that front pay should continue until women comprise fifty percent of each M level and the Section Chief level. The defendants, therefore, will have a large degree of control over how long front pay continues, and this method will make up for the inequities inherent in a back pay formula that does not take into account the effects of past discrimination. *We have chosen to allow front pay in this manner rather than calculating back pay by taking into account events occurring back to 1965. This method better serves the purposes of Title VII.* Front pay in this case will have the effect of moving women into the higher levels rather than merely compensating them for discrimination in the past. Back pay for only a few of those years of discrimination, without restoring women to their rightful places, would not fully compensate the plaintiff class. Damages Order at 6–8 (emphasis added).

Fourth, we allowed prejudgment interest, and granted injunctive relief. Based on our findings in the damages order, the parties drafted and the court approved the damages judgement.

C. The Tenth Circuit's Opinion.

The Tenth Circuit reversed and remanded, finding error in our remedy. *Pitre,* 843 F.2d at 1264. The circuit court found that a group remedy, determined by formula, was appropriate. *Id.* at 1275–76. It further found that our determination to grant back pay, front pay, and injunctive relief was proper. *Id.* at 1276. However, the circuit court found that our remedy failed in two manners to adequately consider the effects of past discrimination: First, we inadequately accounted for the lingering effects of past discrimination in determining the amount of back pay. *Id.* at 1278. Second, we insufficiently considered the effects of past discrimination in determining how to distribute the back pay award. *Id.* at 1279.

As to the amount of back pay, the Tenth Circuit described the cumulative effect of discrimination in the promotion process, stating that "[d]enial of promotion to one grade affects the [employee's] eligibility for later promotions to higher grades." *Id.* at 1278 (quoting *Segar v. Smith,* 738 F.2d 1249, 1291 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985)). The circuit court stated that we recognized this proposition, but that we had nonetheless failed to fully account for the cumulative effects of discrimination in our back pay award. *See id.* at 1278 (focusing on the above-quoted language from our damages order). The circuit court stated:

It is apparent from the quoted statements that the district court believed front pay would in part replace back pay. However, front pay is intended to compensate victims of discrimination for the continuing *future* effects of discrimination until the victim can be made whole.... Front pay is thus a supplement to back pay, not a substitute for it, particularly where as here the front pay is granted to only a limited number of employees.

*Id.* at 1278–79.

The Tenth Circuit also found that we inadequately considered past discrimination in our distribution of the back pay award. *Id.* at 1279. Essentially, the circuit court held that our focus in distributing back pay was too narrow. For example, we limited the distribution of back pay for discrimination in promotions from the M–40 grade to the M–50 grade to those women already in the M–40 grade. However, this limitation was improper, because absent discrimination, other women would have progressed to the M–40 level.

The Tenth Circuit concluded:

It is not our province to attempt to devise a remedy at this level. Rather, we remand to allow the district court to resolve these problems. On remand, the court is free to consider any method of determining the appropriate amount of back and front pay to which the class is entitled. Some courts have ordered parties to negotiate a suitable approach to determining back pay. Other courts have expressed a preference for group comparisons. For example, the salary of representative groups of women could be compared with groups of men of similar education and experience or length of service. The differences could be distributed pro rata among the members of the particular groups. By not using the women's current position in the company, the effects of past discrimination may be more fully incorporated into the formula. In principle, the district court's method of calculating the promotions that should have gone to women with those that actually did go to women could again be

used. The court, must, however, either attempt to account for the effect of past discrimination on the position of women at the beginning of the relevant period or explain why such consideration is unnecessary.

*Id.* (citations omitted).

## II. *The New Remedy.*

Following the Tenth Circuit's opinion, we directed the parties to attempt to reach an agreement as to the approrpriate remedy. They were unable to do so, and we ordered them to file briefs addressing (1) the amount of back pay owed to the class, (2) the proper distribution of back pay to the class, and (3) the front pay owed to the class after reconsideration of the back pay issue.

### A. The Amount of Back Pay.

■ The Tenth Circuit found that our back pay award failed to adequately account for the lingering effects of past discrimination which caused the plaintiff damages during the relevant period. The parties have submitted vastly different proposals as to how we may remedy this failure. The plaintiff proposes that the court

order defendant to pay to class members a sum equal to the difference between what women were proportionately entitled to receive and the amount they were paid.

\* \* \* \* \* \*

In the salaried grades, in other words, if women comprised 60% of the work force, they should have received 60% of all salaries paid. The back pay fund amount is arrived at by subtracting from this ideal figure the aggregate amount they were actually paid.

We find this approach unacceptable. At issue in this action are a finite number of identifiable decisions by the defendant regarding promotions and downgrades. We should focus these specific decisions and award the plaintiff damages when there is discrimination, rather than simply determining whether woman received a pro rata portion of all salaries paid.

The defendant proposes that our earlier back pay award sufficiently accounted for the effects of past discrimination and need not be altered. The defendant presents different analysis regarding promotions to section chief, the M–50 grade, and the M–40 grade. As to promotions to section chief, the defendant contends that the court should look separately at employees promoted from the M–50 grade and employees promoted from other grades. It asserts that women received an equitable share of the promotions of non–M–50 employees, and that women were wrongly denied only 0.68 of the section chief promotions that went to M–50 employees. As to promotions to the M–50 grade, the defendant argues that because our prior decision considered as promotions reclassifications and upgrades of employees who were previously downgraded, "the court greatly *enlarged* the backpay from what it would have been if the court had just focused on true vacancies during the liability period." Further, the court's decision not to give the defendant credit for over-promotions of women in 1979 and 1980 enlarged the back pay award. Thus, the defendant contends that the court need not adjust its award of back pay to account for past discrimination in promotions. As to promotions to the M–40 grade, the defendant asserts that the disparity between promotions of men and women before 1975 is statistically insignificant, making revision of the previous back award unnecessary.

Generally, we disagree with the defendant's contention that no revision of our back pay award is warranted in light of the Tenth Circuit's reversal of our earlier order. Further, we are not inclined to adopt a number of the defendant's suggested changes from our earlier orders. For example, in determining back pay, we will continue to disregard the statistical over-promotions of women which occurred in some years for some grades. Additionally, we still consider as promotions reclassifications and upgrades of persons previously downgraded. Finally, we still believe that the appropriate pool for promotions to each grade consists of those employees in the next lower grade.

Because we find the damages proposals of both parites to be unacceptable, we must devise our own remedy to alleviate the flaws of our earlier back pay award. As stated above, we must "either attempt to account for the effect of past discrimination on the position of women at the beginning of the relevant period or explain why such consideration is unnecessary." *Pitre*, 843 F.2d at 1279.

Our backpay award will again compare the promotions and downgrades that actually went to women to those that should have gone to women. The difference between the instant remedy and our prior award is the distribution of employees at the beginning of the relevant period.[3] In our earlier award, we began our analysis using the defendant's acutal work force on December 11, 1974. The instant award begins by developing a hypothetical work force which would have been in place at the end of 1974 if the defendant had not discriminated against women in promotions and downgrades between 1965 an 1974. Our calculations regarding this hypothetical work force are included in Table 1.

To devise the hypothetical 1974 work force, we must begin with the 1965 work force and track the promotions and downgrades which would have occurred absent discrimination. Unfortunately, the distribution of employees in 1965 is unknown; thus, it too must be surmised. We took a conglomerate of the 1973 and 1974 work forces to arrive at a hypothetical distribution for 1965. We then analyzed the promotions and downgrades for each grade in each year, and determined (based on the hypothetical percentage of women in the promotion or downgrade pool) the number which would have gone to women absent discrimination. This number is added to the previous year's total of women in the grade, yielding the new total. This new total is divided by the total number of

**3.** The relevant period runs from December 11, 1974, 180 days before the filing of the plaintiff's Equal Employment Opportunity Commission charge of discrimination, *see* Liability Order at 3, to December 31, 1980, the date of the close of the evidence.

employees in the grade, yielding the new hypothetical percentage of women in the grade.[4]

The actual 1974 work force had fewer employees than the hypothetical 1974 work force which we ascertained in Table 1. To reconcile our hypothetical findings with the actual number of employees, we multiplied the 1974 percentages of women found in Table 1 by the total number of employees in the actual 1974 work force. This yields the number of women that would be employed in each grade in 1974 absent discrimination. These calculations are included in Table 2.

Having determined the hypothetical 1974 work force, we can determine the back pay to which the plaintiff is entitled in much the same manner employed in the damages order and damages judgment. There is, however, one fundamental difference: Previously, we compared the actual promotions and downgrades during the relevant period to those which would have occurred if the defendant had not discriminated after 1974, whereas the instant order compares the actual numbers with those which would have resulted absent discrimination after 1965. In this manner, the instant order compensates the plaintiff for the lingering effect of previous discrimination which was felt by the plaintiff during the relevant period.

Table 3 includes calculations of the positions which women were wrongly denied during the relevant period. For each year, the number of promotions or downgrades of women which would have occurred absent discrimination is netted against the actual number of promotions or downgrades. The difference, if discriminatory, is listed. Table 3 also includes hypothetical work forces for each year in the relevant period; these work forces are determined in the same manner as those in Table 1.[5]

The following is a summary of the damages owed to the plaintiff for statistically excessive downgrades of women during the relevant period. The figures in the *Number of Positions* column are calculated in Table 3 (in that table, they are in the column labelled *Difference (If Discriminatory)*). The *Average Monthly Earnings Difference* is the average earnings difference between the women downgraded and the men left in the grade for the period in question. The calculations of these figures are shown and discribed in Table 4 and its explanation.[6] The *Average Downgrade Length* indicates the average number of months that women were downgraded; Table 5 shows the calculations of these figures. The *Recovery* column indicates the amount to which the plaintiff is entitled. This amount is determined by multiplying the number of positions by the average earnings difference by the average downgrade length.

| Grade | Number of Positions | Average Monthly Earnings Difference | Average Downgrade Length (mos.) | Recovery |
|---|---|---|---|---|
| M–40 to 30 | 0.80 | $ 214 | 42 | $ 7,190 |
| M–30 to 20 | 2.44 | 82 | 25 | 5,002 |
| M–20 to 10 | 1.29 | 134 | 32 | 5,532 |
| M–10 to L0 | 5.85 | 989 | 16 | 36,410 |
| | | | | $ 54,134 |

**4.** A more detailed review of the numbers in Table 1 is included in the explanation which precedes the table.

**5.** A more detailed analysis of the numbers in Table 3 is included in the explanation preceding the table.

**6.** We note that the earnings figures in Table 4 vary from the earnings figures in the damages judgment. In places, the damages judgment does not include the earnings of all appropriate employees in its average earnings calculations. Thus, we chose to recalculate the averages. However, the only evidence of employee earnings before us was provided in an exhibit accompanying the plaintiff's damages memorandum, and the earnings listed in the exhibit were substantially lower (for both men and women) than those listed in the damages judgment. To be consistent, we have used the earnings figures included in the plaintiff's exhibit in all of our calculations regarding back pay.

Thus, the plaintiff is entitled to back pay in the amount of $54,134 for excessive downgrades.

The amount owed to the plaintiff for wrongfully denied promotions is summarized below. As determined in Table 3, the defendant's discrimination resulted in fewer female promotions to section chief and to grades M–50 and M–30. We analyze each of these employment levels separately. The column entitled *Number of Positions* indicates the number of promotions which women were wrongfully denied in the year in question and in all previous years in the relevant period. These numbers are calculated and explained in Table 6. The *Average Yearly Earnings Difference* column shows the difference in average earnings between men promoted to the level in question and women who remained in the promotion pool. These figures are calculated and further described in Table 7 and its explanation. The *Recovery* column indicates the amount that the plaintiff may recover, which is determined by multiplying the number of positions by the average yearly earnings difference.

Section Chief Promotions

| Year | Number of Positions | Average Yearly Earnings Difference | Recovery |
|------|------|------|------|
| 1976 | 0.00 | $1,152 | $     0 |
| 1977 | 0.49 | 1,152 | 564 |
| 1978 | 1.23 | — | 0 |
| 1979 | 2.31 | 2,115 | 4,886 |
| 1980 | 3.14 | 3,401 | 10,679 |
| | | | $16,129 |

M–50 Promotions

| Year | Number of Positions | Average Yearly Earnings Difference | Recovery |
|------|------|------|------|
| 1976 | 0.98 | $2,421 | $ 2,373 |
| 1977 | 2.28 | 1,060 | 2,417 |
| 1978 | 3.90 | 1,782 | 6,950 |
| 1979 | 5.21 | 3,474 | 18,100 |
| 1980 | 5.21 | 4,167 | 21,710 |
| | | | $51,550 |

M–30 Promotions

| Year | Number of Positions | Average Yearly Earnings Difference | Recovery |
|------|------|------|------|
| 1976 | 0.17 | $1,120 | $   190 |
| 1977 | 0.34 | 8 | 3 |
| 1978 | 0.34 | 431 | 147 |
| 1979 | 0.34 | 972 | 330 |
| 1980 | 0.34 | 1,678 | 571 |
| | | | $ 1,241 |
| | | Total | $68,920 |

Thus, the plaintiff is entitled to $68,920 for back pay for wrongfully denied promotions.

The total back pay owed to the plaintiff for excessive downgrades and wrongfully denied promotions is $123,054. Our damages order awarded the plaintiff prejudg-

ment interest at the rate established by K.S.A. 16–204, with no annual compounding. As set forth in Table 8, the plaintiff is entitled to $166,308.14 in prejudgment interest on the backpay award. The total amount of back pay and prejudgment interest is therefore $289,362.14. The palintiff is entitled to post-judgment interest on this amount at the rate provided in K.S.A. 16–204 (post-judgment interest shall be calculated as if this order were dated July 1, 1989).

## B. The Amount of Front Pay.

Our earlier award of damages included amounts for front pay, which, as the Tenth Circuit stated, we wrongly used as a substitute for back pay. Nevertheless, the circuit court held that front pay was an appropriate remedy under the facts of this case. *See Pitre*, 843 F.2d at 1276. Having redetermined the back pay to which the plaintiff is entitled, we must reconsider the front pay issue.

■ "Front pay is intended to compensate victims of discrimination for the continuing *future* effects of discrimination until the victim can be made whole." *Id.* at 1278. In essence, front pay is a substitute for reinstatement. *Bruno v. Western Electric Co.*, 829 F.2d 957, 966 (10th Cir. 1987).

■ In our damages order, we stated that frong pay should be awarded to the plaintiff "until women comprise fifty percent of each M level and the section chief level." Damages Order at 7. The plaintiff contends that front pay should continue until women "are paid aggregate salaries in direct proportion to their representation in the salary grades," and that further discovery is needed as to the front pay issue. The defendant asserts that the front pay award should cease when women are promoted to fifty percent (50%) of the vacancies for the level in question. How-

ever, we remain convinced that front pay should be awarded until women comprise fifty percent (50%) of each M-level and the section chief level.[7] It is true that the defendant will have ceased discriminating once women begin to receive half of the promotions to a given level, but the lingering effects of past discrimination will continue to be felt until women constitute half of the work force for the level.

Since 1980, the defendant's M-level and section chief work force has been greatly reduced, largely because of reorganization following divestiture of the American Telephone and Telegraph Company. Thus, the defendant explains, opportunities to promote women have not been available. Given this, we may choose one of two options: First, we could cease awarding front pay because the defendant's recent actions have been non-discriminatory and because, if possible, the defendant would promote women until they were proportionately represented in the higher employment levels. Alternatively, we could continue to award front pay because even though the defendant would remedy the situation if promotion opportunities were available, women continue to feel the effects of past discrimination. We prefer the second alternative, which places the hardship of the present impossibility of correcting past discrimination on the defendant, the party found to have discriminated, rather than on the plaintiff, the victim of the discrimination.

The front pay to which the plaintiff is entitled is determined in much the same manner as was the back pay award for wrongfully denied promotions. For each year from 1981 to present, the number of positions for which the plaintiff may recover front pay remains constant, and equals the number of positions for which back pay was awarded in 1980. Because no evidence regarding employees' earnings for years after 1980 is before us,[8] we will simply use

---

7. We note that since 1985, the defendant has instituted a new employee classification scheme, and that there are no longer M-level or section chief designations. To simplify matters, however, we will continue to refer to M-level employees and section chiefs.

8. As explained in Footnote 6, we choose not to rely on the earnings difference as set forth in the damages judgment. The analysis in the damages judgment does extend through 1984, but it is flawed because (1) not all relevant employee's earnings are used in the calcula-

the earnings differences for 1980, plus an inflation factor of ten percent (10%) per year.[9] Consequently, the front pay to which the plaintiff is entitled for each year after 1980 is equal to the back pay due the plaintiff for 1980, plus ten percent (10%) per year. The yearly front pay recoveries are set forth below:

| | |
|---|---|
| 1981 | $ 36,256 |
| 1982 | 39,882 |
| 1983 | 43,870 |
| 1984 | 48,257 |
| 1985 | 53,082 |
| 1986 | 58,391 |
| 1987 | 64,230 |
| 1988 | 70,653 |
| 1989 (6 mos.) | 38,859 |
| Total | $453,480 |

Thus, the plaintiff may recover a total of $453,480 in front pay. Under our damages order, the plaintiff is entitled to prejudgment interest on the front pay award at the state statutory rate. This prejudgment interest, calculated in Table 9, totals $197,668.93. Consequently, the plaintiff is entitled to a total of $651,148.93 for front pay and prejudgment interest on the front pay. The plaintiff may recover post-judgment interest on this amount at the rate set forth in K.S.A. 16-204 (as with back pay, post-judgment interest on front pay shall be calculated as if this order were dated July 1, 1989). Accordingly, the total amount of front pay, back pay, and pre-judgment interest is $940,511.07.

## C. The Distribution of the Award.

■ The Tenth Circuit also found that we "insufficiently considered the effects of past discrimination in determining how to distribute the amount of back pay." *Pitre*, 843 F.2d at 1278. Our earlier award limited the distribution of back pay to women in

the promotion or downgrade pool for the position in question. For example, women in the M-40 grade were the only class members to recover for denial of promotions to the M-50 grade. However, as explained by the circuit court, "but for the discrimination, other women would have progressed to the M-40 level.... By not using the women's current position in the company, the effects of past discrimination may be more fully incorporated into the formula." *Id.*

The Tenth Circuit indicated that we should consider the plaintiff's proposal regarding distribution:

[T]he district court might well consider the plaintiff class' expressed desire as to how the award should be distributed among the class members. In Title VII suits, the class victims are often in the best position to evaluate the actual damage caused to particular individuals by discrimination in employment practices. We stress, however, that the ultimate fashioning of relief is left to the district court's good judgment....

*Id.* at 1279-80 (citation omitted). The plaintiff proposes that the award be distributed based on seniority:

The damages suffered by the class at both the salaried and supervisory levels should be lumped together and distributed pro rata according to length of seniority. Plaintiff proposes to reward those class members who assisted in presenting the case with a bonus [extending their length of service by 25% for purposes of determining the distribution of the award].

Exactitude and absolute fairness are beyond reach, as most courts and the

---

tions, and (2) no calculations were made as to the earnings difference between men promoted to section chief and women remaining in the M-50 grade.

9. Although we have labelled the ten percent (10%) increase an "inflation factor," the increase is not intended to reflect inflation as it is ordinarily understood. Rather, it reflects the fact that for each grade at issue, the earnings difference between men and women increased during the relevant period (usually the rise was rather steady, and usually it was at a rate signif-

icantly greater than ten percent (10%)). We assume that this trend continued through the 1980's, but that the yearly increases in the earnings difference slowed because of the defendant's heightened awareness of the need to treat women fairly.

Additionally, we note that the figures on earnings differences included in the damages judgment, which run through 1984, support our assumption that the earnings difference between men and women continued to rise.

Tenth Circuit have noted. But substantial fairness can be achieved by lumping together both the salaried and section chief back pay funds and paying each class member a proportional share of the damages, based upon length of seniority. It is at least arguable, and not patently unreasonable, to conclude that the longer a woman remained employed at Western Electric, the more quantitative discrimination she suffered.

We find the plaintiff's suggestion to be reasonable. The court, relying on Appendix L to the plaintiff's damages memorandum, has prepared Table 10, which indicates each class member's length of service and recovery in connectiuon with the back pay award.

Moreover, although the circuit court's opinion did not address the issue, we agree with the plaintiff that front pay should likewise be distributed proportionately. However, the plaintiff appears to suggest that the front pay award should be divided among all class members, no matter their employment status. We disagree. Front pay is awarded in lieu of promoting victims of discrimination. It reasonably follows that anyone who leaves employment with the defendant is no longer entitled to front pay. We have no evidence before us indicating which class members have been terminated since the close of the relevant period, and thus we cannot set forth the distribution of front pay. The plaintiff is directed to prepare and circulate to the defendant for approval a journal entry regarding front pay conforming to the following standards: Front pay is to be distributed proportionately based on the class members' length of service as set forth in Table 10. Each yearly front pay total plus the interest accured on such total, as set forth in Table 11, shall be divided among only those class members who remained employed by the defendant at the close of the year in question. In other words, if J. Alonzo was terminated in 1984, she could share in the front pay awards for 1981, 1982, and 1983, but not in the awards for subsequent years. Her portion of the 1981 award, for example, would depend on her length of service as compared to the total length of service of all of the class members entitled to share in the 1981 award.

Finally, the plaintiff urges the court to expand the injunctive relief previously granted to provide for monitoring and reporting. We decline to do so; no change is made from the injunctive relief provided in the original damages order. We additionally note that the plaintiff is entitled to reasonable attorney's fees incurred since July 1, 1985. However, we have no evidence before us regarding attorney's fees, and we therefore make no determination on fees at this date. We urge the parties to negotiate and resolve this matter on their own if at all possible.

IT IS THEREFORE ORDERED that the plaintiff is entitled to recover from the defendant back pay plus prejudgment interest in the amount of $289,362.14. This sum shall be distributed to the class in accordance with the instant order (see Table 10). Post-judgment interest on the back pay award shall be determined at the rate provided by K.S.A. 16–204, and shall be calculated as if this order were dated July 1, 1989.

IT IS FURTHER ORDERED that the plaintiff is entitled to recover from the defendant front pay plus interest in the amount of $651,148.93. The plaintiff shall prepare and present to the court an approved journal entry regarding distribution of this sum, in accordance with the directives of the instant order (see page 976 and Table 11). Post-judgment interest on the front pay award shall be calculated at the rate set forth in K.S.A. 16–204, and shall be computed as if this order were dated July 1, 1989.

APPENDIX
Summary of Tables

Table 1: Tracking of the Hypothetical Work Force, 1965–1974
Table 2: Hypothetical 1974 Work Force
Table 3: Promotion and Downgrade Analysis, 1974–1980
Table 4: Average Monthly Earnings Difference—Downgrades
Table 5: Average Length of Female Downgrades
Table 6: Cumulative Effects of Discriminatory Promotions
Table 7: Average yearly Earnings Difference—Promotions
Table 8: Prejudgment Interest on the Back Pay Award
Table 9: Prejudgment Interest on the Front Pay Award
Table 10: Distribution of the Back Pay Award Among Class Members
Table 11: Yearly Front Pay Awards, Including Interest, To Divide Among the Class

Explanation of Table 1

Table 1 is a hypothetical tracking of the distribution of the defendant's work force assuming that there was no discrimination after 1965. The purpose of the table is to determine the 1974 percentage of females at various employment levels which would have resulted from non-discriminatory conduct. The table is based on the actual number of promotions and downgrades which occurred from 1966 to 1974. However, the table's numbers are entirely hypothetical because no data regarding the number of persons in each grade in 1965 is available, and because the defendant engaged in discrimination after 1965. A brief explanation of each column follows.

Year, grade: This column includes each employment grade for the years 1966 to 1974.

Prior total: This column indicates the total number of employees in the grade in the previous year. No actual totals are available. For 1966, the prior totals are the averages of the 1973 and 1974 totals. Subsequent year's totals are based on these averages and the promotions and downgrades between 1965 and the year in question. As to M–10s, the court has assumed that the total for each year from 1966 to 1974 is 34.

Additions: This column shows the number of persons added to the grade during the year in question. Additions result from promotions of persons in the next lower grade, and from downgrades of persons in the next higher grade.

Subtractions: This column indicates the number of persons that left the grade during the year in question. Persons leave the grade, or are subtracted, because they are promoted or downgraded.

New total: This column indicates the total number of employees in the grade for the year in question. The prior total plus additions minus subtractions equals the new total.

Prior female total: This column indicates the number of women in the grade in the previous year. The 1966 totals are based on the averages of the 1973 and 1974 totals.

Expected female additions: This column shows the number of women which would have been added to the grade if the defendant did not discriminate in its promotions and downgrades. In the case of promotions, the numbers are arrived at by multiplying the additions to the grade in question by the previous year's percentage of females in the next lower grade. (The female percentages for 1965, which are not listed, may be calculated by dividing the 1966 prior female total by the 1966 prior total.) In the case of downgrades, which for purposes of Table 1 occurred only in 1974, the numbers are arrived at by multiplying the additions to the grade by the previous year's percentage of females in the next higher grade. As to M–10's, the court has assumed that fifty percent (50%) of the additions are women.

Expected female subtractions: This column shows the number of women which would have left the grade if the defendant did not discriminate. For both promotions and downgrades, the numbers are arrived at by multiplying the subtractions to the grade in question by the previous year's percentage of females in the same grade.

New female total: This column indicates the number of women in the grade for the year in question. The prior female total plus the expected female additions minus the expected female subtractions equals the new female total.

Percentage of females: This column indicates the percentage of females which would be in the grade at the end of the year in question if the defendant had not discriminated. The numbers are determined by dividing the new female total by the new total.

Table 1: The Hypothetical Workforces, 1965–1974

| year, grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| **1966** | | | | | | | | | |
| sc | 41 | 3 | 0 | 44 | 2 | 0.21 | 0.00 | 2.21 | 5 |
| m50 | 29 | 6 | 3 | 32 | 2 | 2.88 | 0.21 | 4.67 | 15 |
| m40 | 25 | 4 | 6 | 23 | 12 | 3.08 | 2.88 | 12.20 | 53 |
| m30 | 22 | 2 | 4 | 20 | 17 | 1.16 | 3.08 | 15.08 | 75 |
| m20 | 12 | 5 | 2 | 15 | 7 | 4.25 | 1.16 | 10.09 | 67 |
| m10 | 34 | 5 | 5 | 34 | 29 | 2.50 | 4.25 | 27.25 | 80 |
| **1967** | | | | | | | | | |
| sc | 44 | 2 | 0 | 46 | 2.21 | 0.30 | 0.00 | 2.51 | 5 |
| m50 | 32 | 3 | 2 | 33 | 4.67 | 1.59 | 0.30 | 5.96 | 18 |
| m40 | 23 | 5 | 3 | 25 | 12.20 | 3.75 | 1.59 | 14.36 | 57 |
| m30 | 20 | 8 | 5 | 23 | 15.08 | 5.36 | 3.75 | 16.69 | 73 |
| m20 | 15 | 9 | 8 | 16 | 10.09 | 7.20 | 5.36 | 11.93 | 75 |
| m10 | 34 | 9 | 9 | 34 | 27.25 | 4.50 | 7.20 | 24.55 | 72 |
| **1968** | | | | | | | | | |
| sc | 46 | 5 | 0 | 51 | 2.51 | 0.90 | 0.00 | 3.41 | 7 |
| m50 | 33 | 11 | 5 | 39 | 5.96 | 6.27 | 0.90 | 11.33 | 29 |
| m40 | 25 | 8 | 11 | 22 | 14.36 | 5.84 | 6.27 | 13.93 | 63 |
| m30 | 23 | 6 | 8 | 21 | 16.69 | 4.50 | 5.84 | 15.35 | 73 |
| m20 | 16 | 6 | 6 | 16 | 11.93 | 4.32 | 4.50 | 11.75 | 73 |
| m10 | 34 | 6 | 6 | 34 | 24.55 | 3.00 | 4.32 | 23.23 | 68 |
| **1969** | | | | | | | | | |
| sc | 51 | 1 | 0 | 52 | 3.41 | 0.29 | 0.00 | 3.70 | 7 |
| m50 | 39 | 5 | 1 | 43 | 11.33 | 3.15 | 0.29 | 14.19 | 33 |
| m40 | 22 | 4 | 5 | 21 | 13.93 | 2.92 | 3.15 | 13.70 | 65 |
| m30 | 21 | 2 | 4 | 19 | 15.35 | 1.46 | 2.92 | 13.89 | 73 |
| m20 | 16 | 5 | 2 | 19 | 11.75 | 3.40 | 1.46 | 13.69 | 72 |
| m10 | 34 | 5 | 5 | 34 | 23.23 | 2.50 | 3.40 | 22.33 | 66 |
| **1970** | | | | | | | | | |
| sc | 52 | 6 | 0 | 58 | 3.70 | 1.98 | 0.00 | 5.68 | 10 |
| m50 | 43 | 11 | 6 | 48 | 14.19 | 7.15 | 1.98 | 19.36 | 40 |
| m40 | 21 | 10 | 11 | 20 | 13.70 | 7.30 | 7.15 | 13.85 | 69 |
| m30 | 19 | 11 | 10 | 20 | 13.89 | 7.92 | 7.30 | 14.51 | 73 |
| m20 | 19 | 6 | 11 | 14 | 13.69 | 3.96 | 7.92 | 9.73 | 70 |
| m10 | 34 | 6 | 6 | 34 | 22.33 | 3.00 | 3.96 | 21.37 | 63 |
| **1971** | | | | | | | | | |
| sc | 58 | 6 | 0 | 64 | 5.68 | 2.40 | 0.00 | 8.08 | 13 |
| m50 | 48 | 10 | 6 | 52 | 19.36 | 6.90 | 2.40 | 23.86 | 46 |
| m40 | 20 | 1 | 10 | 11 | 13.85 | 0.73 | 6.90 | 7.68 | 70 |
| m30 | 20 | 1 | 1 | 20 | 14.51 | 0.70 | 0.73 | 14.48 | 72 |
| m20 | 14 | 10 | 1 | 23 | 9.73 | 6.30 | 0.70 | 15.33 | 67 |
| m10 | 34 | 10 | 10 | 34 | 21.37 | 5.00 | 6.30 | 20.07 | 59 |
| **1972** | | | | | | | | | |
| sc | 64 | 1 | 0 | 65 | 8.08 | 0.46 | 0.00 | 8.54 | 13 |
| m50 | 52 | 1 | 1 | 52 | 23.86 | 0.70 | 0.46 | 24.10 | 46 |
| m40 | 11 | 3 | 1 | 13 | 7.68 | 2.16 | 0.70 | 9.14 | 70 |
| m30 | 20 | 4 | 3 | 21 | 14.48 | 2.68 | 2.16 | 15.00 | 71 |
| m20 | 23 | 6 | 4 | 25 | 15.33 | 3.54 | 2.68 | 16.19 | 65 |
| m10 | 34 | 6 | 6 | 34 | 20.07 | 3.00 | 3.54 | 19.53 | 57 |
| **1973** | | | | | | | | | |
| sc | 65 | 5 | 0 | 70 | 8.54 | 2.30 | 0.00 | 10.84 | 15 |
| m50 | 52 | 0 | 5 | 47 | 24.10 | 0.00 | 2.30 | 21.80 | 46 |
| m40 | 13 | 4 | 0 | 17 | 9.14 | 2.84 | 0.00 | 11.98 | 70 |
| m30 | 21 | 8 | 4 | 25 | 15.00 | 5.20 | 2.84 | 17.36 | 69 |
| m20 | 25 | 11 | 8 | 28 | 16.19 | 6.27 | 5.20 | 17.26 | 62 |
| m10 | 34 | 11 | 11 | 34 | 19.53 | 5.50 | 6.27 | 18.76 | 55 |
| **1974 promotions** | | | | | | | | | |
| sc | 70 | 1 | 0 | 71 | 10.84 | 0.46 | 0.00 | 11.30 | 16 |
| m50 | 47 | 2 | 1 | 48 | 21.80 | 1.40 | 0.46 | 22.74 | 47 |
| m40 | 17 | 5 | 2 | 20 | 11.98 | 3.45 | 1.40 | 14.03 | 70 |
| m30 | 25 | 4 | 5 | 24 | 17.36 | 2.48 | 3.45 | 16.39 | 68 |
| m20 | 28 | 3 | 4 | 27 | 17.26 | 1.65 | 2.48 | 16.43 | 61 |
| m10 | 34 | 3 | 3 | 34 | 18.76 | 1.50 | 1.65 | 18.61 | 55 |

| year, grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| 1974 downgrades | | | | | | | | | |
| sc | 71 | 0 | 0 | 71 | 11.30 | 0.00 | 0.00 | 11.30 | 16 |
| m50 | 48 | 0 | 0 | 48 | 22.74 | 0.00 | 0.00 | 22.74 | 47 |
| m40 | 20 | 0 | 1 | 19 | 14.03 | 0.00 | 0.70 | 13.33 | 70 |
| m30 | 24 | 1 | 2 | 23 | 16.39 | 0.70 | 1.36 | 15.73 | 68 |
| m20 | 27 | 2 | 3 | 26 | 16.43 | 1.36 | 1.83 | 15.96 | 61 |
| m10 | 34 | 3 | 5 | 32 | 18.61 | 1.83 | 2.75 | 17.69 | 55 |

Table 2: The Hypothetical 1974 Work Force

To determine how females would be distributed in the 1974 work force had there been no discrimination since 1965, the court multiplied the hypothetical percentage of females in each grade, as determined in Table 1, by the actual total number of workers in the grade in 1974.

| Grade | Percent Female | Total in Grade | Total Females |
|---|---|---|---|
| Section Chief | 16% | 41 | 6.56 |
| M–50 | 47% | 26 | 12.22 |
| M–40 | 70% | 28 | 19.60 |
| M–30 | 68% | 23 | 15.64 |
| M–20 | 61% | 13 | 7.93 |
| M–10 | 55% | 19 | 10.45 |

### Explanation of Table 3

Table 3 compares the actual promotions and downgrades of women during the relevant period (1974 to 1980) to those which would have occurred had the defendant not discriminated since 1965. For each year, the table includes (1) promotion and/or downgrade analysis and (2) a hypothetical work force assuming no discrimination since 1965.

The columns included in the promotion and downgrade analysis are as follows:

Grade: This column includes each employment grade.

Total promotions [downgrades): This column indicates the total number of employees promoted to or downgraded from the grade in question.

Hypothetical female %: This column shows the percentage of women which would be in the promotion pool or the downgrade pool if the defendant had not discriminated since 1965. The promotion pool consists of the employees in the next lower grade in the previous year. For example, the promotion pool for section chief promotions in 1978 consists of employees in the M–50 grade in 1977. To determine the percentage of women in the pool (the hypothetical female %) look to the 1977 hypothetical work force's percentage of females for grade M–50. The downgrade pool consists of the employees in the same grade in the previous year. For example, the downgrade pool for section chief demotions in 1975 consists of employees in the section chief grade in 1974. To determine the percentage of women in the pool (the hypothetical female %), look to the 1974 hypothetical work force's percentage of females for section chief.

Expected female promotions (downgrades): This column indicates the number of women which would have been promoted or downgraded had there been no discrimination after 1965. The numbers are derived by multiplying the total promotions (downgrades) by the hypothetical female %.

Actual female promotions (downgrades): This column shows the actual number of women that the defendant promoted or downgraded during the year.

Difference (if discriminatory): This column shows the number of women denied placement in the grade because of the defendant's discrimination. In the case of promotions, the expected female promotions minus the actual female promotions yields the number of women wrongly denied promotion into the grade. Only positive numbers, indicating under-promotion of women, are listed. In the case of downgrades, the actual female downgrades minus the expected female downgrades equals the number of women wrongly demoted from the grade. Only positive numbers, indicating excessive downgrading of women, are listed.

Table 3 also includes a hypothetical work force for each year during the relevant period. The hypothetical work force indicates the distribution of the defendant's employees which would have resulted if the defendant had not engaged in discriminatory conduct after 1965. Basically, this part of Table 3 is an extension of Table 1, and an explanation of

each column is included in the Explanation of Table 1. Columns two through five (<u>prior total</u>, <u>additions</u>, <u>subtractions</u>, and <u>new total</u>) track the actual promotions and downgrades of the people employed in grades M–10 through section chief on December 11, 1975; the numbers in these columns are not hypothetical. The last five columns (<u>prior female total</u>, <u>expected female additions</u>, <u>expected female subtractns</u>, <u>new female total</u>, and <u>percentage of females</u>) indicate the hypothetical distribution of women in the grades, based on the actual totals of employees in the grades, which would have occurred absent discrimination following 1965.

## Table 3: Promotion and Downgrade Analysis, 1974–1980

<u>1975 Downgrade Analysis</u>

| grade | total downgrades | hypothetical female % | expected female downgrades | actual female downgrades | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 0 | 16 | 0.00 | 0 | |
| m50 | 6 | 47 | 2.82 | 1 | |
| m40 | 6 | 70 | 4.20 | 5 | 0.80 |
| m30 | 10 | 68 | 6.80 | 8 | 1.20 |
| m20 | 11 | 61 | 6.71 | 8 | 1.29 |
| m10 | 13 | 55 | 7.15 | 13 | 5.85 |

<u>1975 Hypothetical Work Force</u>

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| sc | 41 | 0 | 0 | 41 | 6.56 | 0.00 | 0.00 | 6.56 | 16 |
| m50 | 26 | 0 | 6 | 20 | 12.22 | 0.00 | 2.82 | 9.40 | 47 |
| m40 | 28 | 6 | 6 | 28 | 19.60 | 2.82 | 4.20 | 18.22 | 65 |
| m30 | 23 | 6 | 10 | 19 | 15.64 | 4.20 | 6.80 | 13.04 | 69 |
| m20 | 13 | 10 | 11 | 12 | 7.93 | 6.80 | 6.71 | 8.02 | 67 |
| m10 | 19 | 11 | 13 | 17 | 10.45 | 6.71 | 7.15 | 10.01 | 59 |

<u>1976 Downgrade Analysis</u>

| grade | total downgrades | hypothetical female % | expected female downgrades | actual female downgrades | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 0 | 16 | 0.00 | 0 | |
| m50 | 0 | 47 | 0.00 | 0 | |
| m40 | 0 | 65 | 0.00 | 0 | |
| m30 | 4 | 69 | 2.76 | 4 | 1.24 |
| m20 | 0 | 67 | 0.00 | 0 | |
| m10 | 0 | 59 | 0.00 | 0 | |

<u>1976 Hypothetical Work Force (considering downgrades only)</u>

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| sc | 41 | 0 | 0 | 41 | 6.56 | 0.00 | 0.00 | 6.56 | 16 |
| m50 | 20 | 0 | 0 | 20 | 9.40 | 0.00 | 0.00 | 9.40 | 47 |
| m40 | 28 | 0 | 0 | 28 | 18.22 | 0.00 | 0.00 | 18.22 | 65 |
| m30 | 19 | 0 | 4 | 15 | 13.04 | 0.00 | 2.76 | 10.28 | 69 |
| m20 | 12 | 4 | 0 | 16 | 8.02 | 2.76 | 0.00 | 10.78 | 67 |
| m10 | 17 | 0 | 0 | 17 | 10.01 | 0.00 | 0.00 | 10.01 | 59 |

<u>1976 Promotion Analysis</u>

| grade | total promotions | hypothetical f% promo pool | expected female promotions | actual female promotions | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 0 | 47 | 0.00 | 0 | |
| m50 | 3 | 65 | 1.95 | 0 | 1.95 |
| m40 | 0 | 69 | 0.00 | 0 | |
| m30 | 2 | 67 | 1.34 | 1 | .034 |
| m20 | 0 | 59 | 0.00 | 0 | |
| m10 | 0 | —— | 0.00 | 0 | |

## 1976 Hypothetical Work Force (considering downgrades and promotions)

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| sc | 41 | 0 | 0 | 41 | 6.56 | 0.00 | 0.00 | 6.56 | 16 |
| m50 | 20 | 3 | 0 | 23 | 9.40 | 1.95 | 0.00 | 11.35 | 49 |
| m40 | 28 | 0 | 3 | 25 | 18.22 | 0.00 | 1.95 | 16.27 | 65 |
| m30 | 15 | 2 | 0 | 17 | 10.28 | 1.34 | 0.00 | 11.62 | 68 |
| m20 | 16 | 0 | 2 | 14 | 10.78 | 0.00 | 1.34 | 9.44 | 67 |
| m10 | 17 | 0 | 0 | 17 | 10.01 | 0.00 | 0.00 | 10.01 | 59 |

## 1977 Promotion Analysis

| grade | total promotions | hypothetical f% promo pool | expected female promotions | actual female promotions | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 2 | 49 | 0.98 | 0 | 0.98 |
| m50 | 1 | 65 | 0.65 | 0 | 0.65 |
| m40 | 0 | 68 | 0.00 | 0 | |
| m30 | 1 | 67 | 0.67 | 1 | |
| m20 | 3 | 59 | 1.77 | 3 | |
| m10 | 0 | — | 0.00 | 0 | |

## 1977 Hyopthetical Work Force

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| sc | 41 | 2 | 0 | 43 | 6.56 | 0.98 | 0.00 | 7.54 | 18 |
| m50 | 23 | 1 | 2 | 22 | 11.35 | 0.65 | 0.98 | 11.02 | 50 |
| m40 | 25 | 0 | 1 | 24 | 16.27 | 0.00 | 0.65 | 15.62 | 65 |
| m30 | 17 | 1 | 0 | 18 | 11.62 | 0.67 | 0.00 | 12.29 | 68 |
| m20 | 14 | 3 | 1 | 16 | 9.44 | 1.77 | 0.67 | 10.54 | 66 |
| m10 | 17 | 0 | 3 | 14 | 10.01 | 0.00 | 1.77 | 8.24 | 59 |

## 1978 Promotion Analysis

| grade | total promotions | hypothetical f% promo pool | expected female promotions | actual female promotions | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 5 | 50 | 2.50d | 2 | 0.50 |
| m50 | 4 | 65 | 2.60 | 0 | 2.60 |
| m40 | 1 | 68 | 0.68 | 1 | |
| m30 | 3 | 66 | 1.98 | 3 | |
| m20 | 6 | 59 | 3.54 | 5 | |
| m10 | 0 | — | 0.00 | 0 | |

## 1978 Hypothetical Work Force

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|---|---|---|---|---|---|---|---|---|---|
| sc | 43 | 5 | 0 | 48 | 7.54 | 2.50 | 0.00 | 10.04 | 21 |
| m50 | 22 | 4 | 5 | 21 | 11.02 | 2.60 | 2.50 | 11.12 | 53 |
| m40 | 24 | 1 | 4 | 21 | 15.62 | 0.68 | 2.60 | 13.70 | 65 |
| m30 | 18 | 3 | 1 | 20 | 12.29 | 1.98 | 0.68 | 13.59 | 68 |
| m20 | 16 | 6 | 3 | 19 | 10.54 | 3.54 | 1.98 | 12.10 | 64 |
| m10 | 14 | 0 | 6 | 8 | 8.24 | 0.00 | 3.54 | 4.70 | 59 |

## 1979 Promotion Analysis

| grade | total promotions | hypothetical f% promo pool | expected female promotions | actual female promotions | difference (if discriminatory) |
|---|---|---|---|---|---|
| sc | 5 | 53 | 2.65 | 1 | 1.65 |
| m50 | 3 | 65 | 1.95 | 2 | |
| m40 | 4 | 68 | 2.72 | 4 | |
| m30 | 10 | 64 | 6.40 | 7 | |
| m20 | 9 | 59 | 5.31 | 6 | |
| m10 | 0 | — | 0.00 | 0 | |

1979 Hypothetical Work Force

| grade | prior total | additions | subtractions | new total | prior female total | expected female additions | expected female subtractions | new female total | percentage of females |
|-------|-------------|-----------|--------------|-----------|--------------------|--------------------------|------------------------------|------------------|----------------------|
| sc    | 48          | 5         | 0            | 53        | 10.04              | 2.65                     | 0.00                         | 12.69            | 24                   |
| m50   | 21          | 3         | 5            | 19        | 11.12              | 1.95                     | 2.65                         | 10.42            | 55                   |
| m40   | 21          | 4         | 3            | 22        | 13.70              | 2.72                     | 1.95                         | 14.47            | 66                   |
| m30   | 20          | 10        | 4            | 26        | 13.59              | 6.40                     | 2.72                         | 17.27            | 66                   |
| m20   | 19          | 9         | 10           | 18        | 12.10              | 5.31                     | 6.40                         | 11.01            | 61                   |
| m10   | 8           | 0         | 9            | 0         | 4.70               | 0.00                     | 5.31                         | 0.00             | —                    |

1980 Promotion Analysis

| grade | total promotions | hypothetical f% promo pool | expected female promotions | actual female promotions | difference (if discriminatory) |
|-------|------------------|----------------------------|----------------------------|--------------------------|-------------------------------|
| sc    | 0                | 55                         | 0.00                       | 0                        |                               |
| m50   | 1                | 66                         | 0.66                       | 1                        |                               |
| m40   | 2                | 66                         | 1.32                       | 2                        |                               |
| m30   | 3                | 61                         | 1.83                       | 2                        |                               |
| m20   | 4                | —                          | 0.00                       | 4                        |                               |
| m10   | 0                | —                          | 0.00                       | 0                        |                               |

## Explanation of Table 4

Table 4 shows the average monthly earnings difference between women who were demoted from a grade and men who remained in the grade. We focus on the years 1976, 1977, and 1978 because they are the downgraded years for most women.

If a woman was downgraded for only part of a year, her salary is not considered in our determination of the average monthly salary. For example, J.H. Deutman is not included in the *M–40 to M–30* portion of this table, because she was not at the M–30 grade for the entire year of 1975 or 1976. We note that this does not mean that we do not consider J.H. Deutman's downgrade in our back pay award. Rather, we simply do not use her salary figures in determining the average monthly pay of women downgraded from M–40 to M–30. For women who were laid off from the M–10 grade, the court has used an average monthly salary of $600. This reflects the facts that the laid-off women were entitled to unemployment compensation and were able-bodied persons capable of work, but were not likely to easily obtain jobs at their former salary.

To determine the average monthly pay of men who remained in the grade, we used the 1976 to 1978 salaries of men who were in the grade throughout the relevant period (December 11, 1974 to December 31, 1980). No men remained in the M–10 grade throughout the relevant period. However, D.M. Gate was in the M–10 grade until 1979, and we have used his salary for the years 1976 to 1978 to determine the average monthly salary of men who remained in the grade.

## Table 4: Average Monthly Earnings Difference—Downgrades

| Women Downgraded From M–40 to M–30 | 1976 | 1977 | 1978 | Total |
|-------------------------------------|--------|--------|--------|--------|
| M.B. Brown                          | 12,774 | 13,860 |        | 26,634 |
| J.G. Fanning                        | 12,570 | 13,656 | 14,676 | 40,902 |
| D.H. Johnson                        | 12,774 | 13,860 | 14,480 | 41,114 |
| E.E.Volner                          | 12,774 | 13,860 | 14,880 | 41,514 |
|                                     |        |        |        | 150,165 |

150,164 ÷ 11 (total years downgraded ÷ 12 months in year) = 1,138 (average monthly salary)

| Men Remaining in M–40 | 1976 | 1977 | 1978 | Total |
|------------------------|--------|--------|--------|--------|
| G.R. Cole              | 14,244 | 15,702 | 16,902 | 46,866 |
| R.E. Hale              | 14,352 | 15,648 | 16,884 | 46,884 |
| D.J. Hicks             | 15,300 | 16,878 | 18,084 | 50,262 |
| M.L. Read              | 14,568 | 16,086 | 17,692 | 48,346 |
| J.E. Reeder            | 15,000 | 16,498 | 17,772 | 49,270 |
| R.E. Wegley            | 15,444 | 16,902 | 18,135 | 50,481 |
|                        |        |        |        | 292,109 |

292,109 ÷ 18 (total years in grade) ÷ 12 (months in year) = 1,352 (average monthly salary)

DIFFERENCE:  1,352 − 1,138 = 214

| Women Downgraded From M–30 to M–20 | 1976 | 1977 | 1978 | Total |
|---|---|---|---|---|
| L.M. Campbell | | 12,420 | | 12,420 |
| J.H. Deutman | | 12,730 | | 12,730 |
| C.L. Grosdidier | 11,640 | 12,624 | 13,560 | 37,824 |
| C.A. Martin | 11,640 | | | 11,640 |
| R.S. Stroth | | 12,672 | 13,608 | 26,280 |
| D.H. Swope | 11,640 | 12,624 | | 24,264 |
| D.M. Thorington | | 12,672 | 13,608 | 26,280 |
| A.H. Wynne | 11,664 | 12,648 | | 24,312 |
| | | | | 175,750 |

175,750 ÷ 14 (total years in grade ÷ 12 (months in year) = 1,046 (average monthly salary)

| Men Remaining in M–30 | 1976 | 1977 | 1978 | Total |
|---|---|---|---|---|
| R.W. Kelly | 12,318 | 13,516 | 14,760 | 40,594 |
| | | | | 40,594 |

40,594 ÷ 3 (total years in grade) ÷ 12 (months in year) = 1,128 (average monthly salary)

DIFFERENCE: 1,128 − 1,046 = 82

| Women Downgraded From M–20 to M–10 | 1976 | 1977 | 1978 | Total |
|---|---|---|---|---|
| K.C. Bowdish | 10,476 | 11,292 | | 21,768 |
| S.T. Brannon | 10,476 | | | 10,476 |
| D.S. DeGraeves | 10.035 | 9,881 | 10,720 | 30,636 |
| E.D. Finnell | 10,513 | | | 10,513 |
| P.D. Jones | 10,476 | 11,292 | 12,060 | 33,828 |
| W.G. Wilhoite | 10,056 | 11,337 | | 21,393 |
| | | | | 128,614 |

128,614 ÷ 12 (total years in grade) ÷ 12 (months in year) = 893 (average monthly salary)

| Men Remaining in M–20 | 1976 | 1977 | 1978 | Total |
|---|---|---|---|---|
| R.J. Fortune | 11,054 | 12,312 | 13,606 | 36,972 |
| | | | | 36,972 |

36,972 ÷ 3 (total years in grade) ÷ 12 (months in year) = 1,027 (average monthly salary)

DIFFERENCE: 1,027 − 893 = 134

Women Laid Off From M–10
600 = average monthly salary

| Men Remaining in M–10 | 1976 | 1977 | 1978 | Total |
|---|---|---|---|---|
| D.M. Gates | 10,824 | 11,930 | 12,856 | 35,610 |
| | | | | 35,610 |

35,610 ÷ 3 (total years in grade) ÷ 12 (months in grade) = 989 (average monthly salary)

DIFFERENCE: 989 − 600 = 389

Table 5: Average Length of Female Downgrades

| M–40 to M–30 | Number of Months | |
|---|---|---|
| M.B. Brown | 38 | |
| J.H. Deutman | 8 | |
| J.G. Fanning | 46 | |
| D.H. Johnson | 54 | |
| E.E. Volner | 66 | |
| | 212 | Average = 42 |

| M–30 to M–20 | | |
|---|---|---|
| L.M. Campbell | 30 | |
| J.H. Deutman | 26 | |
| C.L. Grosdidier | 42 | |
| C.A. Martin | 22 | |
| J.D. Rainwater | 12 | |
| K.K. Shepherd | 12 | |
| R.S. Stroh | 35 | |

| M–30 to M–20 | Number of Months | |
|---|---|---|
| D.B. Swope | 34 | |
| D.M. Thorington | 39 | |
| B.H. Wienke | 8 | |
| C.W. Williams | 8 | |
| A.H. Wynne | 35 | |
| | 303 | Average = 25 |
| **M–20 to M–10** | | |
| K.C. Bowdish | 35 | |
| S.T. Brannon | 26 | |
| D.S. DeGraeves | 43 | |
| E.D. Finnell | 33 | |
| P.D. Jones | 46 | |
| J.B. Schooler | 8 | |
| K.K. Shepherd | 30 | |
| W.G. Wilhoite | 34 | |
| | 255 | Average = 32 |
| **M–10 to laid off** | | |
| D.A. Belk | 66 | |
| B.A. Bradley | 66 | |
| D.H. Brannon | 12 | |
| A.M. Calvin | 17 | |
| P.A. Chase | 69 | |
| K.J. Cook | 60 | |
| B.L. Draskovic | 60 | |
| A.P. Gomez | 70 | |
| M.W. McCracken | 10 | |
| I.G. Mendez | 26 | |
| D.M. Pitts | 71 | |
| P.T. Pitts | 69 | |
| M.K. Tomlin | 72 | |
| | 668 | Average = 51 |

Although the average length of the layoffs is 51 months, the court will not use this figure in its damages determination. It is unduly large because it includes the layoff periods of numerous women who were never rehired. We will instead use in our calculations a layoff figure of 16 months, the average length of the layoffs of the women who were recalled (D.H. Brannon, A.M. Calvin, M.W. McCracken, and I.G. Mendez).

Table 6: Cumulative Effects of Discriminatory Promotions

To determine the cumulative effects of discriminatory promotions, the court begins by looking to Table 3 to determine the number of promotions wrongfully denied to women in each year for each grade (Promotions Denied). Promotions do not all occur on January 1; rather they are scattered throughout the year. To reflect this fact, we assume that all promotions occur in the middle of the year, and thus, for the year in question the plaintiff may recover for only one-half of the number of Promotions Denied. This number is found in the Yearly Positions Compensated column. Additonally, because a promoted employee enjoys a greater salary in the promotion year and in all subsequent years, our award compensates the plaintiff for the year of the wrongfully denied promotion and for subsequent years in the relevant period. For example, the cumulative number of positions for which the plaintiff should receive compensation for the defendant's failure to promote women to grade M–50 in the year 1978 includes the total of the Promotions Denied in 1976 and 1977, plus the 1978 Yearly Positions Compensated. This aggregate number is found in the column labelled Cumulative Positions Compensated.

| Year, Grade | Promotions Denied | Yearly Positions Compensated | Cumulative Positions Compensated |
|---|---|---|---|
| **1976** | | | |
| M–50 | 1.95 | 0.98 | 0.98 |
| M–30 | 0.34 | 0.17 | 0.17 |
| **1977** | | | |
| Section Chief | 0.98 | 0.49 | 0.49 |
| M–50 | 0.65 | 0.33 | 2.28 |
| M–30 | | | 0.34 |
| **1978** | | | |
| Section Chief | 0.50 | 0.25 | 1.23 |
| M–50 | 2.60 | 1.30 | 3.90 |
| M–30 | | | 0.34 |
| **1979** | | | |
| Section Chief | 1.65 | 0.83 | 2.31 |
| M–50 | | | 5.21 |
| M–30 | | | 0.34 |
| **1980** | | | |
| Section Chief | | | 3.14 |
| M–50 | | | 5.21 |
| M–30 | | | 0.34 |

## Explanation of Table 7

Table 7 shows the average yearly earnings difference between men who were promoted to a higher grade and women who remained in a lower grade. The calculations for each particular grade are made only for those years in which women were wrongfully denied promotions (see Tables 3 and 6). If a man was promoted for only part of a year, his salary for that partial year is not considered in our determination of the average yearly earnings for promoted men. Nonetheless, we still consider his promotion in our determination of promotions wrongfully denied and our back pay award.

Generally, persons recently promoted receive a lower salary than persons who have been in a position for a longer period of time. For 1976 and 1977, the years immediately following the downgrade period, there are no numbers available for recently promoted persons (because nobody was promoted during the downgrade period). Thus, the court has in places used the 1978 numbers for 1977, and the 1977 numbers for 1976 (an asterisk marks these substitutions).

## Table 7: Average Yearly Earnings Difference—Promotions

| Men Promoted to Section Chief | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| E.R. Cronin | — | — | 18,200 | 21,707 | 25,133 |
| O. Fowler | — | — | 18,200 | 21,807 | 25,078 |
| R.J. Hinkle | — | — | 19,617 | 21,612 | 27,133 |
| J.K. Morrison | — | — | — | 23,733 | 26,783 |
| C.B. Martin | — | — | — | 22,379 | 25,133 |
| R.D. Edwards | — | — | — | 21,031 | 26,467 |
| A.P. Ramirez | — | — | — | — | 22,450 |
| J.R. Staley | — | — | — | — | 25,033 |
| S.E. Endecott | — | — | — | — | 23,300 |
| Average | 18,672* | 18,672* | 18,672 | 22,045 | 25,168 |

| Women M–50's Not Promoted | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| J.D. Pitre | — | 17,520 | 19,208 | 19,930 | 21,385 |
| S.P. Rogers | — | — | — | — | 21,958 |
| L.G. Stanley | — | — | — | — | 21,958 |
| Average | 17,520* | 17,520 | 19,208 | 19,930 | 21,767 |
| Difference | 1,152 | 1,152 | — | 2,115 | 3,401 |

| Men Promoted to M–50 | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| S.E. Endecott | — | 16,944 | 18,300 | — | — |
| J.E. Jones | — | — | — | 21,790 | 23,698 |

| Men Promoted to M–50 | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| C.J. Leon | — | — | — | 21,676 | 23,905 |
| J.E. Russell | — | — | — | — | 21,958 |
| R.C. Updike | — | — | 19,752 | 21,508 | — |
| D.A. Burnett | — | 16,276 | 18,036 | 20,046 | 21,958 |
| J.R. Staley | — | 16,944 | 18,900 | — | — |
| Average | 16,721* | 16,721 | 18,747 | 21,255 | 22,880 |

| Women M–40's Not Promoted | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| L.G. Stanley | 14,244 | 15,492 | 16,632 | — | — |
| M.B. Brown | — | — | — | 16,318 | 18,422 |
| J.G. Fanning | — | — | — | — | 17,074 |
| B.E. Hartsell | 13,056 | 14,304 | 15,444 | 16,914 | 18,830 |
| J.V. Hotchkiss | 13,036 | 14,304 | 15,444 | 16,914 | 18,526 |
| I.G. Hueston | 15,384 | 16,892 | 18,396 | — | — |
| D.H. Johnson | — | — | — | — | 17,834 |
| B.C. Miller | 14,375 | 15,784 | 17,136 | 18,616 | 21,048 |
| M.V. Miller | 14,028 | 15,404 | 16,800 | 18,530 | — |
| G.W. Moore | 14,628 | 16,142 | 17,746 | 19,394 | 21,224 |
| S.P. Rogers | 15,651 | 16,966 | 18,120 | — | — |
| S.R. Reed | — | — | — | — | 17,009 |
| C.S. Smerchek | — | — | — | — | 18,448 |
| Average | 14,300 | 15,661 | 16,965 | 17,781 | 18,713 |
| Difference | 2,421 | 1,060 | 1,782 | 3,474 | 4,167 |

| Men Promoted to M–30 | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| J.D. Milburn | — | — | — | — | 16,572 |
| S.D. Kreighbaum | — | 12,488 | 13,770 | 15,133 | 16,572 |
| R.W. Mead | — | — | — | — | 16,142 |
| Average | 12,488* | 12,488 | 13,770 | 15,133 | 16,429 |

| Women M–20's Not Promoted | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| J.H. Deutman | — | 12,730 | — | — | — |
| S.T. Brannon | — | — | 13,584 | 14,796 | — |
| L.M. Campbell | — | 12,420 | — | — | — |
| C.L. Grosdidier | 11,640 | 12,624 | 13,560 | — | — |
| C.A. Martin | 11,640 | — | — | — | — |
| R.S. Stroth | — | 12,672 | 13,608 | — | — |
| D.B. Swope | 11,640 | 12,624 | — | — | — |
| D.M. Thorington | — | 12,672 | 13,608 | — | — |
| A.H. Wynne | 11,664 | 12,648 | — | — | — |
| D.S. DeGraeves | — | — | — | 13,804 | 15,130 |
| E.D. Finnell | — | — | 12,828 | 14,034 | 15,334 |
| D.S. Hodge | 10,931 | 12,250 | 13,576 | 15,132 | 13,832 |
| P.D. Jones | — | — | — | — | 15,538 |
| D.S. Pittman | 10,692 | 11,676 | 12,612 | 13,819 | — |
| P.H. Gulley | — | — | — | 13,380 | 15,054 |
| M.W. McCracken | — | — | — | — | 13,617 |
| Average | 11,368 | 12,480 | 13,339 | 14,161 | 14,751 |
| Difference | 1,120 | 8 | 431 | 972 | 1,678 |

Table 8:  Prejudgment Interest on the Back Pay Award

Table 8 shows the prejudgment interest on the back pay award.  The interest on the back pay earned in each year during the relevant period is set forth separately.  The table reflects the fact that the applicable Kansas statutory rate for post-judgment interest varied throughout the years.  *See* K.S.A. 16–204.  Likewise, the prejudgment interest rate must vary.

We have not previously allotted the total back pay for excessive downgrades ($54,134) between the years 1975 and 1976.  The only excessive downgrades in 1976 were 1.24

downgrades from M–30 to M–20. Given the average monthly earnings difference of $82 (see Table 4) and the 25 month average length of downgrades (see Table 5), the plaintiff is entitled to $2,050 for downgrades in 1976.  Thus, the plaintiff is entitled to $52,084 for downgrades in 1975.

| 1975 Back Pay: $52,084 | Rate | Years | Interest |
|---|---|---|---|
| July 1975 to June 1980 | 0.08 | 5 | 20,833.60 |
| July 1980 to June 1982 | 0.12 | 2 | 12,500.16 |
| July 1982 to June 1986 | 0.15 | 4 | 31,250.40 |
| July 1986 to June 1987 | 0.105 | 1 | 5,468.82 |
| July 1987 to June 1988 | 0.095 | 1 | 4,947.98 |
| July 1988 to June 1989 | 0.10 | 1 | 5,208.40 |
| | | | 80,209.36 |

| 1976   Back Pay: $4,613 | Rate | Years | Interest |
|---|---|---|---|
| July 1976 to June 1980 | 0.08 | 4 | 1,476.16 |
| July 1980 to June 1982 | 0.12 | 2 | 1,107.12 |
| July 1982 to June 1986 | 0.15 | 4 | 2,767.80 |
| July 1986 to June 1987 | 0.105 | 1 | 484.37 |
| July 1987 to June 1988 | 0.095 | 1 | 438.24 |
| July 1988 to June 1989 | 0.10 | 1 | 461.30 |
| | | | 6,734.99 |

| 1977   Back Pay: $2,984 | Rate | Years | Interest |
|---|---|---|---|
| July 1977 to June 1980 | 0.08 | 3 | 716.00 |
| July 1980 to June 1982 | 0.12 | 2 | 716.16 |
| July 1982 to June 1986 | 0.15 | 4 | 1,790.40 |
| July 1986 to June 1987 | 0.105 | 1 | 313.32 |
| July 1987 to June 1988 | 0.095 | 1 | 283.48 |
| July 1988 to June 1989 | 0.10 | 1 | 298.40 |
| | | | 4,117.76 |

| 1978 Back Pay: $7,097 | Rate | Years | Interest |
|---|---|---|---|
| July 1978 to June 1980 | 0.08 | 2 | 1,135.52 |
| July 1980 to June 1982 | 0.12 | 2 | 1,703.28 |
| July 1982 to June 1986 | 0.15 | 4 | 4,258.20 |
| July 1986 to June 1987 | 0.105 | 1 | 745.19 |
| July 1987 to June 1988 | 0.095 | 1 | 674.22 |
| July 1988 to June 1989 | 0.10 | 1 | 709.70 |
| | | | 9,226.11 |

| 1979 Back Pay: $23,316 | Rate | Years | Interest |
|---|---|---|---|
| July 1979 to June 1980 | 0.08 | 1 | 1,865.28 |
| July 1980 to June 1982 | 0.12 | 2 | 5,595.84 |
| July 1982 to June 1986 | 0.15 | 4 | 13,989.60 |
| July 1986 to June 1987 | 0.105 | 1 | 2,448.18 |
| July 1987 to June 1988 | 0.095 | 1 | 2,215.02 |
| July 1988 to June 1989 | 0.10 | 1 | 2,331.60 |
| | | | 28,445.52 |

| 1980 Back Pay: $32,960 | Rate | Years | Interest |
|---|---|---|---|
| July 1980 to June 1982 | 0.12 | 2 | 7,910.40 |
| July 1982 to June 1986 | 0.15 | 4 | 19,776.00 |
| July 1986 to June 1987 | 0.105 | 1 | 3,460.80 |

| 1980 Back Pay: $32,960 | Rate | Years | Interest |
|---|---|---|---|
| July 1987 to June 1988 | 0.095 | 1 | 3,131.20 |
| July 1988 to June 1989 | 0.10 | 1 | 3,296.00 |
| | | | 37,574.40 |

Combining these totals yields the total amount of prejudgment interest on the back pay award:

80,209.36
6,734.99
4,117.76
9,226.11
28,445.52
37,574.40

166,308.14

Table 9:  Prejudgment Interest on the Front Pay Award

| 1981 Front Pay: $36,256 | Rate | Years | Interest |
|---|---|---|---|
| July 1981 to June 1982 | 0.12 | 1 | 4,350.72 |
| July 1982 to June 1986 | 0.15 | 4 | 21,753.60 |
| July 1986 to June 1987 | 0.105 | 1 | 3,806.88 |
| July 1987 to June 1988 | 0.095 | 1 | 3,444.32 |
| July 1988 to June 1989 | 0.010 | 1 | 3,625.60 |
| | | | 36,981.12 |

| 1982 Front Pay: $39,882 | Rate | Years | Interest |
|---|---|---|---|
| July 1982 to June 1986 | 0.15 | 4 | 23,929.20 |
| July 1986 to June 1987 | 0.105 | 1 | 4,187.61 |
| July 1987 to June 1988 | 0.095 | 1 | 3,788.79 |
| July 1988 to June 1989 | 0.10 | 1 | 3,988.20 |
| | | | 35,893.80 |

| 1983 Front Pay: $43,870 | Rate | Years | Interest |
|---|---|---|---|
| July 1983 to June 1986 | 0.15 | 3 | 19,741.50 |
| July 1986 to June 1987 | 0.105 | 1 | 4,606.35 |
| July 1987 to June 1988 | 0.095 | 1 | 4,167.65 |
| July 1988 to June 1989 | 0.10 | 1 | 4,387.00 |
| | | | 32,902.50 |

| 1984 Front Pay: $48,257 | Rate | Years | Interest |
|---|---|---|---|
| July 1984 to June 1986 | 0.15 | 2 | 14,447.10 |
| July 1986 to June 1987 | 0.105 | 1 | 5,066.99 |
| July 1987 to June 1988 | 0.095 | 1 | 4,584.42 |
| July 1988 to June 1989 | 0.10 | 1 | 4,825.70 |
| | | | 28,954.21 |

| 1985 Front Pay: $53,082 | Rate | Years | Interest |
|---|---|---|---|
| July 1985 to June 1986 | 0.15 | 1 | 7,962.30 |
| July 1986 to June 1987 | 0.105 | 1 | 5,573.61 |
| July 1987 to June 1988 | 0.095 | 1 | 5,042.79 |
| July 1988 to June 1989 | 0.10 | 1 | 5,308.20 |
| | | | 23,886.90 |

| 1986 Front Pay: $58,391 | Rate | Years | Interest |
|---|---|---|---|
| July 1986 to June 1987 | 0.105 | 1 | 6,131.06 |
| July 1987 to June 1988 | 0.095 | 1 | 5,547.15 |
| July 1988 to June 1989 | 0.10 | 1 | 5,839.10 |
| | | | 17,517.30 |

| 1987 Front Pay: $64,230 | Rate | Years | Interest |
|---|---|---|---|
| July 1987 to June 1988 | 0.095 | 1 | 6,101.85 |
| July 1988 to June 1989 | 0.10 | 1 | 6,423.00 |
| | | | 12,524.85 |

| 1988 Front Pay: $70,653 | Rate | Years | Interest |
|---|---|---|---|
| July 1988 to June 1989 | 0.10 | 1 | 7,065.30 |

| 1989 Front Pay: $38,859 | Rate | Years | Interest |
|---|---|---|---|
| January 1989 to June 1989 | 0.10 | ½ | 1,942.95 |

Combining these totals yields the total amount of prejudgment interest on the front pay award:

36,981.12
35,893.80
32,902.50
28,954.21
23,886.90
17,517.30
12,524.85
7,065.30
1,942.95
———————
197,668.93

Table 10: Distribution of the Back Pay Award Among Class Members

Table 12 indicates the length of service of each class member, and the amount of the member's back pay recovery based on her length of service. The total length of service of all class members is 10,417.5 months. The total back pay award, plus interest, is $289,362.14. Therefore, for each month's service, a class member receives $27.78.

| Name | Months of Service | Recovery |
|---|---|---|
| J. Alonzo | 99.5 | $ 2,714.36 |
| B. Atkins | 13.0 | 361.14 |
| D. Belk | 49.0 | 1,361.22 |
| K. Bowdish | 165.0 | 4,583.70 |
| B. Bradley | 46.0 | 1,277.88 |
| D. Brannon | 130.0 | 3,611.40 |
| S. Brannon | 175.5 | 4,875.39 |
| L. Brewer | 20.0 | 555.60 |
| K. Briggs | 13.5 | 375.03 |
| M. Brown | 291.0 | 8,083.98 |
| A. Calvin | 167.0 | 4,639.26 |
| J. Campbell | 13.5 | 375.03 |

| Name | Months of Service | Recovery |
|---|---|---|
| L. Campbell | 169.5 | 4,708.71 |
| D. Carpenter | 86.5 | 2,402.97 |
| P. Chase | 32.0 | 888.96 |
| H. Cipolla | 19.0 | 527.82 |
| K. Cook | 66.0 | 1,833.48 |
| D. DeGraeves | 113.0 | 3,139.14 |
| J. Deutman | 245.0 | 6,806.10 |
| B. Draskovic | 56.0 | 1,555.68 |
| J. Fanning | 250.0 | 6,945.00 |
| B. Fowler | 27.5 | 763.95 |
| S. Fuller | 114.0 | 3,166.92 |
| J. Fuhrman | 11.0 | 305.58 |
| M. Garth | 71.0 | 1,972.38 |
| A. Gomez | 59.0 | 1,639.02 |
| B. Grecian | 21.0 | 583.38 |
| M. Groh | 218.5 | 6,069.93 |
| C. Grosdidier | 157.5 | 4,375.35 |
| C. Guerra | 24.0 | 666.72 |
| P. Gulley | 110.0 | 3,055.80 |
| B. Hartsell | 179.0 | 4,972.62 |
| N. Herring | 19.0 | 527.82 |
| D. Hodge | 113.0 | 3,139.14 |
| G. Holland | 80.0 | 2,222.40 |
| H. Hood | 103.0 | 2,861.34 |
| J. Hotchkiss | 151.0 | 4,194.78 |
| I. Hueston | 291.0 | 8,083.98 |
| D. Johnson | 361.0 | 10,028.58 |
| M. Johnston | 28.0 | 777.84 |
| R. Johnston | 216.5 | 6,014.37 |
| P. Jones | 157.0 | 4,361.46 |
| V. Kasenurm | 23.5 | 652.83 |
| J. Keck | 14.0 | 388.92 |
| S. Kilgore | 189.5 | 5,264.31 |
| B. Lacy | 13.0 | 361.14 |
| B. Larken | 26.0 | 722.28 |
| C. Martin | 154.0 | 4,278.12 |
| M. McCracken | 111.0 | 3,083.58 |
| I. Mendez | 75.0 | 2,083.50 |
| B. Miller | 206.5 | 5,736.57 |
| M. Miller | 262.5 | 7,292.25 |
| N. Monroe | 8.5 | 236.13 |
| G. Moore | 258.0 | 7,167.24 |
| B. O'Dell | 11.5 | 319.47 |
| A. Onka | 94.0 | 2,611.32 |
| R. Pendergrass | 21.0 | 583.38 |
| D. Pittman | 128.0 | 3,555.84 |
| D. Pitts | 62.0 | 1,722.36 |
| P. Pitts | 34.5 | 958.41 |
| S. Reed | 234.0 | 6,500.52 |
| B. Richardson | 20.0 | 555.60 |
| D. Rinker | 18.5 | 513.93 |
| S. Rogers | 358.0 | 9,945.24 |
| J. Rupp | 175.5 | 4,875.39 |
| J. Schooler | 184.5 | 5,125.41 |
| K. Shepherd | 216.0 | 6,000.48 |
| C. Smerchek | 212.0 | 5,889.36 |
| G. Smith | 193.0 | 5,361.54 |
| S. Spencer | 31.0 | 861.18 |
| M. Spidell | 12.5 | 347.25 |
| L. Stanley | 265.0 | 7,361.70 |
| R. Stroth | 154.0 | 4,278.12 |

| Name | Months of Service | Recovery |
|---|---|---|
| E. Somers | 215.0 | 5,972.70 |
| D. Swope | 220.0 | 6,111.60 |
| D. Thorington | 159.0 | 4,417.02 |
| M. Tomlin | 24.0 | 666.72 |
| S. Tribble | 87.0 | 2,416.86 |
| E. Volner | 306.0 | 8,500.68 |
| C. Walsh | 160.0 | 4,444.80 |
| B. Warren | 19.5 | 541.71 |
| L. Welker | 20.5 | 569.49 |
| B. Wienke | 120.0 | 3,333.60 |
| W. Wilhoite | 189.0 | 5,250.42 |
| C. Williams | 135.0 | 3,750.30 |
| R. Williams | 26.0 | 722.28 |
| A. Wynne | 200.0 | 5,556.00 |
| D. Yates | 12.0 | 333.36 |
| P. Yurchak | 28.0 | 777.84 |

Table 11: Yearly Front Pay Awards, Including Interest, To Be Divided Among the Class

The following indicates the yearly front pay awards, including prejudgment interest, which are to be divided among the members of the class who are still employed by the defendant at the close of the year in question.